**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

SAMUEL DE DIOS,

                    Plaintiff,

vs.

BRAND ENERGY AND
INFRASTRUCTURE SERVICES,

                Defendant.

No. C 18-4011-MWB

**OPINION AND ORDER
REGARDING DEFENDANT'S
MOTION TO DISMISS AND/OR
STAY AND COMPEL
ARBITRATION and PLAINTIFF'S
MOTION TO CONDUCT
DISCOVERY**

---

**TABLE OF CONTENTS**

I.     **INTRODUCTION**...................................................................2

    A.    *Factual Background* ....................................................2

        1.    *The arbitration agreement* ...................................2

        2.    *The accident and aftermath* .................................4

    B.    *Procedural Background* ..............................................5

II.    **LEGAL ANALYSIS** ........................................................6

    A.    *The Motion To Conduct Discovery*..............................6

        1.    *Arguments of the parties*......................................7

        2.    *Applicable standards*...........................................7

        3.    *Application of the standards* ................................9

    B.    *The Motion To Compel Arbitration* ..........................12

        1.    *Arguments of the parties*....................................12

        2.    *Applicable standards*......................................... 13

        3.    *Application of the standards* .............................. 15

            a.    *Unconscionability* ...................................... 15

            b.    *Lack of consideration* ................................. 18

        4.    *Summary*.............................................................. 19

    C.    *Dismiss Or Stay?*...................................................... 19

III.   *CONCLUSION* ............................................................. 20

In this action, originally filed in the Iowa District Court for Woodbury County and removed to this court, plaintiff Samuel De Dios claims that his former employer, defendant Brand Energy And Infrastructure Services, wrongfully terminated him for asserting rights under the Iowa Workers' Compensation Act. Brand has moved dismiss or, alternatively, to stay, and compel arbitration of De Dios's claim pursuant to an Agreement to Arbitrate in De Dios's employment application. De Dios contends that the court should not enforce the Agreement to Arbitrate, because it is unconscionable, where signing it was a condition of his employment and it binds only him, and because there is no consideration for it. De Dios also seeks leave to conduct discovery to further develop the factual record on the pending Motion To Compel Arbitration.

## I. INTRODUCTION

### A. Factual Background

#### 1. The arbitration agreement

As part of his application for employment with Brand, De Dios signed the following Agreement to Arbitrate:

TO BE READ AND SIGNED BY APPLICANT

> I understand my employment is contingent on acceptance of agreement to arbitrate claims, under FAA, and I DO AGREE AND CONSENT that I will settle any and all previously unasserted claims, disputes, or controversies arising out of or relating to my candidacy for employment, employment and/or cessation of employment with Brand, exclusively by final and binding arbitration before a neutral Arbitrator. By way of example only, such claims include claims under federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and the law of tort.

Defendant's Exhibit A, Excerpt of Application, page 2 of 4.

On the date of his application, De Dios also signed a Brand Dispute Resolution Program Acknowledgement, which stated the following:

> I have received, read and understand the Brand Dispute Resolution Program for Employees. I also understand and agree that as a condition of my at-will employment and continued employment, I will submit to and seek to resolve any disputes arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment through the Brand Dispute Resolution Program. I understand that this Dispute Resolution Program provides for binding arbitration as the exclusive, final and required method to resolve all covered claims that I otherwise have a right to litigate in court.

> I acknowledge that I have had sufficient time to review and consider the Brand Dispute Resolution Program, and to ask whatever questions I may have about the Program to the Company or to my private counsel, before signing this acknowledgement form.

Defendant's Exhibit B, Acknowledgement.

The Brand Dispute Resolution Program provides for a four-step dispute resolution process. Defendant's Exhibit D, Dispute Resolution Program. Step Four of the process provides for arbitration, as follows:

> STEP FOUR—ARBITRATION

> *If the dispute has not been resolved in Steps One or Two, or mediation has not succeeded, the exclusive, final and required method to resolve covered claims, that you would have a right to litigate in court, is through binding arbitration. Either you or Brand may request arbitration. While you do not have to proceed through each of the options in their exact numerical order, the Program is designed with multiple steps to maximize the possibility of resolution prior to arbitration. Any employment and/or personal injury claim arising out of or relating to Brand and employees at-will employment or other disputes covered in this Program, which have not been*

3

> *resolved through Steps One, Two or Three (Mediation),* **shall**
> **be governed by the Federal Arbitration Act (FAA)** *and*
> *resolved by final, binding arbitration administered by the*
> *American Arbitration Association under its current*
> *Employment Rules, and judgment upon the award rendered*
> *by the arbitrator(s) may be entered by any court having*
> *jurisdiction thereof.*

Defendant's Exhibit D, Dispute Resolution Program, 5 (emphasis in the original). The Program also provides that the employee "must pay a $50 processing fee to take your legal dispute to an outside resolution process, such as arbitration," but that "Brand will pay any additional administrative costs associated with the arbitration that exceed this $50 fee." *Id.*

### 2. The accident and aftermath[1]

De Dios alleges, and Brand admits, that, on April 8, 2016, De Dios was assigned by Brand to work on a construction site located on the private property of CF Industries. To enter the property, he had to drive past a security gate and a security guard. De Dios alleges, and Brand admits, that, after entering the property, a vehicle driven by Jonathan Elizondo crashed into the back of his vehicle. De Dios alleges that the collision damaged his vehicle and caused him injuries, including a lower back injury, which Brand denies. De Dios reported the collision and his work injury to Brand's safety manager, Ismael Barba. Brand admits that De Dios reported an off-the-job injury. De Dios alleges that Brand authorized him to choose a medical provider to provide care for the work injury, which Brand denies. De Dios chose to be treated at St. Luke's Hospital. After treating De Dios in the emergency room at St. Luke's Hospital, the ER doctor ordered De Dios not to return to work until April 11, 2016. Brand admits these allegations, but denies the treatment was for a work injury.

---

[1] This statement of the circumstances giving rise to De Dios's dispute with Brand is drawn from De Dios's Petition and Brand's Answer.

De Dios alleges that, on April 11, 2016, he returned to work with Brand, but his back pain worsened, which Brand denies. De Dios alleges that, on April 14, 2016, Brand sent him home because of his work injury, but Brand admits only that it allowed De Dios to go home on April 14, 2016, after De Dios stated to the Safety Manager, upon arrival, that he was not ready to return to work. De Dios alleges that, on April 14, 2016, Brand authorized De Dios to choose a medical provider to care for his work injury, which Brand denies. De Dios alleges that, on April 15, 2016, his family doctor, Alisa M. Olson, DO, treated him for the work injury, which Brand denies for lack of information. De Dios alleges that, also on April 15, 2016, Dr. Olson wrote a letter to Brand regarding De Dios's work injury, which Brand also denies for lack of information. De Dios alleges that, on April 15, 2016, he asserted his rights under the Iowa Workers' Compensation Act, which Brand denies. De Dios contends that, on April 19, 2016, Brand notified him that it had decided to terminate his employment. Brand admits that it terminated De Dios's employment, but contends that the termination, effective May 1, 2016, was for job abandonment.

### B.    *Procedural Background*

De Dios filed his Petition against Brand in state court on January 4, 2018, alleging wrongful termination for asserting rights under the Iowa Workers' Compensation Act. On February 13, 2018, Brand removed this action to this court and filed its Answer denying De Dios's claim and asserting, among other affirmative defenses, that De Dios's claim was subject to an agreement to submit it to binding arbitration.

On February 20, 2018, Brand filed the Motion To Dismiss And/Or Stay And Compel Arbitration (Motion To Compel Arbitration) now before me. On March 30, 2013, De Dios filed his Resistance To Motion To Compel Arbitration. Brand filed its Reply on April 4, 2018. A week later, on April 11, 2018, De Dios filed his Motion To

Conduct Discovery, which is also now before me. On April 24, 2018, Brand filed its Resistance to that motion. De Dios filed no reply.

United States Magistrate Judge Kelly K.E. Mahoney held a scheduling conference with the parties on May 2, 2018. On May 17, 2018, she entered a text order holding in abeyance issuance of a scheduling order and discovery plan, as discussed at the May 2, 2018, scheduling conference, pending my ruling on Brand's Motion To Compel Arbitration and De Dios's Motion To Conduct Discovery.

Although De Dios requested oral arguments on Brand's Motion To Compel Arbitration, I conclude that the parties' written arguments sufficiently develop their positions. Therefore, I will rule on both pending motions on the parties' written submissions.

## II. *LEGAL ANALYSIS*
### A. *The Motion To Conduct Discovery*

Before ruling on Brand's Motion To Compel Arbitration, I will first consider De Dios's Motion To Conduct Discovery, because it will determine whether or not the Motion To Compel Arbitration should be decided on the present record. De Dios seeks leave "to conduct discovery to further develop the factual record on the pending Motion to Compel Arbitration." More specifically, he seeks leave to conduct discovery including, but not limited to, the following: (1) depositions of Brand's corporate representatives; (2) production of documents concerning any amendments to the "BRAND Dispute Resolution Program" that occurred during the time period that he was employed, the costs that he will incur in arbitration, and his personnel file; and (3) identification of the address where the arbitration will take place and who the arbitrators will be. Brand resists any discovery.

### 1. *Arguments of the parties*

De Dios argues that courts have commented on the limited record available to them on a motion to compel arbitration and, on occasion, appellate courts have remanded cases back to district courts to fully develop the record to determine the issue of unconscionability. He contends that discovery is particularly appropriate on motions to compel arbitration, because the court must decide whether or not the arbitration agreement is unconscionable in view of all the circumstances.

In response, Brand points out that De Dios requested an extension of time to file a response to the Motion To Compel Arbitration and eventually filed that response, but did not seek leave to conduct discovery at that time. Brand contends that, because it filed its Reply a week before De Dios filed his Motion To Conduct Discovery, De Dios's Motion is simply untimely. Brand also argues that De Dios points to no material fact in dispute that would be aided by discovery and that there is no need to conduct discovery, where it is clear that the arbitration agreement is valid and that the dispute is arbitrable. Brand also points out that discovery is unnecessary and inappropriate, because De Dios does not articulate how the discovery he seeks is relevant to the disposition of Brand's Motion To Compel Arbitration, if, indeed, the information he seeks is not already available to him. Brand also argues that De Dios's request to depose its "corporate representatives" for unspecified reasons is just a "fishing expedition."

### 2. *Applicable standards*

In a case in which the plaintiff argued that the district court erred in denying her request for discovery concerning the alleged unconscionability of an arbitration agreement, *prior* to resisting a motion to compel arbitration, the Eighth Circuit Court of Appeals explained, "We review the district court's order for an abuse of discretion, allowing the court 'great latitude' in discovery matters." *Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 859 (8th Cir. 2008) (citing *Executive Air Taxi Corp. v. City of Bismarck*, 518 F.3d 562, 570 (8th Cir. 2008)). The court also considered whether the requested

7

discovery concerned matters that were "material to the determination" of the movant's claim that the arbitration agreement was unconscionable. *Id.*; *accord Madol v. Dan Nelson Auto. Grp.*, 372 F.3d 997, 1000 (8th Cir. 2004) (likewise concluding that, where there are no disputed issues of material fact bearing on the propriety of granting a motion to compel arbitration, discovery would serve no purpose); *O.N. Equity Sales Co. v. Pals*, 509 F. Supp. 2d 761, 764 (N.D. Iowa 2007) (denying a motion for immediate discovery on the issue of arbitrability, because the movant had not shown that immediate discovery was required to determine the issue of arbitrability). The Eleventh Circuit Court of Appeals, for example, also agrees that discovery is not required prior to ruling on a motion to compel arbitration, if the party requesting discovery fails to show how the discovery would have any impact on the enforceability of the arbitration clause. *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1318 (11th Cir. 2005).

In *BOSC, Inc. v. Board of Cty. Commissioners of Cty. of Bernalillo*, 853 F.3d 1165 (10th Cir. 2017), the Tenth Circuit Court of Appeals explained, that while certain procedures under 9 U.S.C. § 4—the provision of the Federal Arbitration Act (FAA) providing for motions to compel arbitration—"can look a lot like summary judgment, a motion to compel arbitration sets in motion a summary trial procedure rather than the usual discovery procedures." 853 F.3d at 1176. Specifically,

> [t]his framework is similar to summary judgment practice: the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith. When a quick look at the case reveals that no material disputes of fact exist, a district court may decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration. But if material disputes of fact

> *do* exist, the FAA calls for a *summary trial*—not death by
> discovery. Unless the party alleged to be in default demands
> a jury, the district court shall hear and determine the questions
> at issue. The object of § 4 is to decide quickly—summarily—
> the proper venue for the case, whether it be the courtroom or
> the conference room, so the parties can get on with the merits
> of their dispute.

*BOSC, Inc.*, 853 F.3d at 1177 (internal quotation marks and citations omitted; emphasis in the original).

### 3. *Application of the standards*

Although there is no specific "timeliness" requirement stated in the standards set out, just above, it stands to reason that a party who fails to request discovery prior to the filing of his resistance to a motion to compel arbitration—and, indeed, a party who fails to do so prior to the filing of the movant's reply—has waived the opportunity to do so. *See Khan v. Orkin Exterminating Co., Inc.*, No. C 10–02156 SBA, 2011 WL 4853365, at *4 n.3 (N.D. Cal. Oct. 13, 2011) (where a party had indicated its continued resistance to a motion to compel arbitration, during a stay pending a decision in *AT&T Mobility, Inc. v. Concepcion*, 563 U.S. 333 (2011), but only "embedded" a request for discovery in its resistance, the request was untimely); *Lloyd v. Hovensa LLC.*, 243 F. Supp. 2d 346, 349 (D.V.I. 2003) (where a party opposing a motion to compel arbitration did not seek an order to conduct discovery until after resisting the motion to compel, but waited until the hearing on the motion to compel, the request to conduct discovery was untimely), *reversed on other grounds*, 369 F.3d 263 (3d Cir. 2004).

Yet, even if De Dios's Motion To Conduct Discovery were timely, I conclude that it should not be granted. That is so, because De Dios has failed to show that any of the discovery he seeks would be material to the determination of the Motion To Compel Arbitration. *Pleasants*, 541 F.3d at 859. Rather, this case is one in which a "quick look . . . reveals that no material disputes of fact exist," so that I may decide the Motion To Compel as a matter of law through motions practice. *BOSC, Inc.*, 853 F.3d at 1177.

As set out, below, De Dios argues that the Agreement to Arbitrate is unconscionable because his employment was contingent upon agreeing to it and because it unfairly binds only him, not Brand, to arbitrate claims. He also argues that Brand "surprised" him with the Agreement and did not explain it to him, translate it into Spanish, or give him time to consider it. Finally, he argues that there was no consideration for the Agreement to Arbitrate. Yet, De Dios has not demonstrated how any of the discovery he seeks would be material to any of those contentions in the circumstances of this case. *See Pleasants*, 541 F.3d at 859.

Rather, the fact that De Dios's employment was contingent on his signing the Agreement to Arbitrate is obvious from the face of the Agreement itself, *see* Defendant's Exhibit A, Excerpt of Application, page 2 of 4, and that point is reiterated in the Brand Dispute Resolution Program Acknowledgement, which De Dios also signed, *see* Defendant's Exhibit B, Acknowledgement. Similarly, even supposing De Dios's personnel file might somehow be material to the question of whether the Agreement to Arbitrate that he signed *prior* to his employment is unconscionable—which I highly doubt—Brand points out that De Dios already has access to his personnel file from administrative proceedings, and De Dios filed no reply disputing that fact. What the arbitration will cost him, where the arbitration will take place, and who the arbitrators will be are also already known to De Dios from the Brand Dispute Resolution Program document, Defendant's Exhibit D to Motion To Compel Arbitration, and the AAA Employment Arbitration Rules And Mediation Procedures, Defendant's Exhibit A to Resistance To Motion To Conduct Discovery, referenced in the Brand Dispute Resolution Program and now in the record. The Brand Dispute Resolution Program also makes clear that De Dios's administrative costs for the arbitration are limited to $50.

De Dios seeks discovery of any amendments to the Brand Dispute Resolution Program that occurred during the time period that he was employed. Brand contends that only the arbitration procedures in effect at the time of De Dios's agreement are relevant—

as that is all he agreed to. Brand's argument on this point is faulty, because the Brand Dispute Resolution Program *does* provide that subsequent amendments will be applicable to employees. Defendant's Exhibit D, Brand Dispute Resolution Program at 6 (Amendments/Termination). Although I doubt that subsequent amendments to the Brand Dispute Resolution Program, if any, would affect De Dios's unconscionability argument, there is always some possibility that they could. Therefore, rather than authorize discovery, I simply order that, not later than fourteen days from the date of this opinion, Brand shall produce amendments, if any, to the Brand Dispute Resolution Program that occurred during the period of De Dios's employment.

De Dios also argues that Brand "surprised" him with the Agreement and did not explain it to him, translate it into Spanish, or give him time to consider it. He does not explain, however, how any of the discovery he is seeking goes to those issues. Even supposing that it does, De Dios's argument concerning the circumstances in which he signed the Agreement to Arbitrate is not actually material, because it contradicts the representations above his signature in the Acknowledgement. De Dios does not assert that the Agreement to Arbitrate was obtained by fraud, and in the absence of fraud, he cannot contradict his signed representations in the Acknowledgement that he had read and understood the Agreement to Arbitrate and had been given time to consider it. *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993); *Bryant v. Am. Exp. Fin. Advisors, Inc.*, 595 N.W.2d 482, 486 (Iowa 1999) (noting that "[a]n agreement to arbitrate is to be treated like any other contract . . . and a failure to fully read and consider the contract cannot relieve him of its provisions.").

Finally, as Brand suggests, De Dios's desire for undefined Rule 30(b)(6) depositions appears to be nothing more than a "fishing expedition." *Cf. Pony Computer, Inc. v. Equus Computer Sys. of Mo., Inc.*, 162 F.3d 991, 996-97 (8th Cir. 1998) (the district court did not abuse its discretion by denying a belated and general request for an extension of the discovery deadline on the ground that it was a "fishing expedition").

De Dios's Motion To Conduct Discovery is denied.  I will decide the Motion To Compel Arbitration on the record already timely submitted by the parties.

### B.      *The Motion To Compel Arbitration*

Having concluded that the record should not be amplified by discovery, I turn to Brand's Motion To Compel Arbitration, which De Dios opposes.  I begin my analysis, again, with a summary of the parties' arguments.

### 1.      *Arguments of the parties*

In essence, Brand contends that De Dios acknowledged by his signature that he read, understood, and agreed to be bound by the Agreement to Arbitrate, which was part of his employment application and which provides for binding arbitration before the American Arbitration Association (AAA), in accordance with the FAA; that the Agreement to Arbitrate is valid and neither procedurally nor substantively unconscionable, not least because there is no evidence that De Dios could not seek employment elsewhere; and that De Dios's wrongful termination claim is clearly encompassed by that Agreement to Arbitrate.  Brand also argues that De Dios's acceptance and commencement of employment with Brand demonstrated both acceptance and consideration with respect to that Agreement to Arbitrate.  Thus, Brand argues that the court should grant its Motion To Dismiss—or, in the alternative, stay this case pending the outcome of arbitration—and compel arbitration of De Dios's claim.

As mentioned, above, De Dios contends that the court should not enforce the Agreement to Arbitrate, because Brand forced him to sign an unconscionable arbitration clause, as a contract of adhesion, when it told him that his employment was contingent upon agreeing to arbitration for any potential claim.  He argues that Brand "surprised" him with the Agreement to Arbitrate, that he does not remember anyone from Brand explaining the various forms he signed or translating them into Spanish for him, and that he was not given adequate time to contact an attorney. He also points out that the

Agreement to Arbitrate is unfair, because it binds only employees to mandatory arbitration, but does not require Brand to arbitrate any claims against him. He also contends that an arbitration agreement in a job application is not a legally enforceable contract, because there is no consideration for it. Again, he points to the lack of mutuality as demonstrating the lack of consideration.

In its Reply, Brand reiterates that De Dios acknowledged that he had read, understood, and agreed to the Agreement to Arbitrate and, in the absence of fraud, the fact that De Dios did not read or fully understand the Agreement to Arbitrate is insufficient to render it void. Brand also points out that contracts of adhesion, including arbitration agreements as a condition of employment, are not unconscionable. Brand argues that, in the absence of substantive unfairness, unequal bargaining power does not render the Agreement to Arbitrate unconscionable. Here, Brand argues that there is no substantive unfairness, because it has agreed to bear all but $50 of the administrative costs of the arbitration. Thus, Brand argues that the court should compel arbitration of De Dios's claim.

## 2. *Applicable standards*

A motion pursuant to Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure is the appropriate procedure to stay or dismiss a case pending arbitration. *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018) (citing *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017)). As the Eighth Circuit Court of Appeals recently explained,

> This court reviews de novo a district court's decision to compel arbitration. *Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 857 (8th Cir. 2008). Factual findings are reviewed for clear error. *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015).

*Leonard v. Delaware N. Companies Sport Serv., Inc.*, 861 F.3d 727, 729 (8th Cir. 2017).

As the Eighth Circuit Court of Appeals has also explained, under the FAA,

"[A]rbitration is a matter of contract." *[Torres*, 781 F.3d at 968] (internal quotation marks omitted), *quoting AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). A written agreement to arbitrat[e] "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Doubts are resolved in favor of arbitrability." *Cicle v. Chase Bank USA*, 583 F.3d 549, 554 (8th Cir. 2009). But general contract defenses may invalidate arbitration agreements. *Id.*, *quoting Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

*Leonard v. Delaware N. Companies Sport Serv., Inc.*, 861 F.3d 727, 729 (8th Cir. 2017). Thus, the court "ask[s] only whether the arbitration agreement is valid and whether the dispute falls within the terms of that agreement." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015); *accord Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (explaining that, when reviewing an arbitration agreement, courts consider: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement" (internal quotation marks and citations omitted)).

As to validity, under the FAA,

[b]ecause "arbitration is a matter of contract," whether an arbitration provision is valid is a matter of state contract law, and an arbitration provision may be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *[AT&T Mobility LLC v.] Concepcion*, 131 S.Ct. [1740,] 1745–46 [(2011)] (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of

14

> that agreement must be submitted to arbitration. *See Faber [v.*
> *Menard, Inc.]*, 367 F.3d [1048,] 1052 [(8th Cir. 2004)].

*Torres*, 781 F.3d at 968. Here, the parties agree that the applicable state law to determine the validity of the Agreement to Arbitrate is Iowa law.

### 3.     *Application of the standards*

De Dios does not dispute that the second prong of the analysis is met, because his claim of wrongful termination for asserting rights under the Iowa Workers' Compensation Act "falls within the terms of that agreement." *Robinson*, 841 F.3d at 784; *Torres*, 781 F.3d at 968. Thus, what is at issue is the first prong of the analysis, whether the Agreement to Arbitrate is valid. *Id.* at 783; *Torres*, 781 F.3d at 968. De Dios challenges the validity of the Agreement to Arbitrate on grounds of unconscionability, surprise, and lack of consideration.

### a.     *Unconscionability*

In *Faber*, the Eighth Circuit Court of Appeals explained,

> Under Iowa law, the burden of proof that a particular
> provision or contract is unconscionable rests on the party
> claiming it is unconscionable. *In re Estate of Ascherl*, 445
> N.W.2d 391, 392 (Iowa Ct.App.1989). The Iowa Supreme
> Court has established that we should analyze the following
> factors of unconscionability: (1) assent; (2) unfair surprise;
> (3) notice; (4) disparity of bargaining power; and
> (5) substantive unfairness. *Home Federal Sav. & Loan Ass'n
> v. Campney*, 357 N.W.2d 613, 618 (Iowa 1984). The ultimate
> conclusion of whether a provision is unconscionable is to be
> made "in view of all the circumstances." *C & J Fertilizer,
> Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 181 (Iowa
> 1975).

*Faber*, 367 F.3d at 1053. De Dios relies on three of the factors identified under Iowa law as relevant to the unconscionability analysis: disparity of bargaining power, substantive unfairness, and surprise. *Faber*, 367 F.3d at 1053.

There can be no doubt that Brand had the superior bargaining power in its relationship with De Dios, because it was a large national company, and De Dios did not have the ability to negotiate and change particular terms in the form employment application. *Id.* Nevertheless, in *Faber*, the Eighth Circuit Court of Appeals stated that "[m]ere inequality in bargaining power does not make the contract automatically unconscionable," *id.* (citing *Home Federal*, 357 N.W.2d at 619), "and is not enough by itself to overcome the federal policy favoring arbitration." *Id.* (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). This is so, notwithstanding De Dios's reliance on various California decisions, non-binding, here, for the proposition that such inequality in bargaining power, allowing an employer to require an agreement to arbitrate as a condition of employment on a take-it-or-leave-it basis, may suffice to render an arbitration agreement unconscionable. If I were writing on a clean slate, I might agree with those California decisions, but I am not. Indeed, I was the trial judge in *Faber*, and I held that the arbitration agreement at issue was both procedurally and substantively unconscionable, *see Faber v. Menard*, 267 F. Supp. 2d 961 (N.D. Iowa 2003), but the Eighth Circuit Court of Appeals reversed, even though the plaintiff's argument that the arbitration agreement was unconscionable in that case was much stronger than De Dios's argument, here. *See id.* at 974-83.

As Brand points out, De Dios sought employment with Brand, but there is no reason to believe that he could not have also sought employment elsewhere, or that he could only have worked for Brand. *Cf. In re Marriage of Shanks*, 758 N.W.2d 506, 515 (Iowa 2008) (explaining that disparity in bargaining power "may show that the weaker party had no meaningful choice, no real alternative" to assent to the contract (quoting RESTATEMENT (SECOND) OF CONTRACTS § 208 cmt. d)). Nor does De Dios's argument that he was "surprised" by the Agreement to Arbitrate in his employment application, as a condition of employment, tip the Agreement to Arbitrate into the unconscionable category. In *Faber*, the Eighth Circuit Court of Appeals found no unfair surprise (and,

indeed, assent and clear notice, as well) because the employee signed the agreement, which the court *presumed* he had read before signing. *Faber*, 367 F.3d at 1053 (8th Cir. 2004). Here, De Dios not only signed the Agreement to Arbitrate in his employment application, but the Acknowledgement, expressly representing that he had read and understood the Agreement to Arbitrate and had been given time to consider it. Because he does not allege any fraud, he cannot contradict these representations. *Bryant v. Am. Exp. Fin. Advisors, Inc.*, 595 N.W.2d 482, 486 (Iowa 1999); *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993). Thus, he cannot persuasively claim surprise.

In *Faber*, the Eighth Circuit Court of Appeals did caution that the unquestionable disparity in bargaining power between a large company and an individual employee "calls for careful scrutiny of the substance of the contract." 367 F.3d at 1053.

> A bargain is substantively unfair and therefore unconscionable "if it is such as no person in his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other." *Home Federal*, 357 N.W.2d at 619–20. A provision will be invalidated if it is a "nefarious provision, inimical to the public good." *Id*. at 618.

*Faber*, 367 F.3d at 1053. On the other hand, the Iowa Supreme Court has cautioned, that "the doctrine of unconscionability does not exist to rescue parties from bad bargains." *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80 (Iowa 2011).

Even giving careful scrutiny to the Agreement to Arbitrate, I cannot find that it is so substantively unfair as to require me to refuse to enforce it. The arbitration clause here is a long way from one that "no person in his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other," nor is it "nefarious" or "inimical to the public good." *Faber*, 367 F.3d at 1053 (defining substantive unfairness); *see also C & J Vantage Leasing Co.*, 795 N.W.2d at 81 ("Substantive unconscionability involves whether or not the substantive terms of the agreement are so harsh or oppressive that no person in his or her right senses would make

it."). Even though the Agreement to Arbitrate binds only De Dios (and other job applicants and employees), but not Brand, to arbitrate their claims, I have not found any authority supporting the contention that Iowa law requires mutuality of obligation in arbitration clauses or that the absence of such mutuality renders an arbitration agreement substantively unconscionable. *Cf. Penn. Life Ins. Co. v. Simoni*, 641 N.W.2d 807, 812 (Iowa 2002) ("While there may be inefficiencies in requiring arbitration of some of the claims involving these parties, but not others, that is the agreement made by the parties."). Moreover, the adhesive nature of the Agreement to Arbitrate and its lack of mutuality are offset by Brand's assumption of all but $50 of the administrative costs to the employee. Where the costs of the arbitration imposed on the employee are de minimis, this is clearly not the kind of fee-splitting arrangement that may be unconscionable, because it does not indicate that fees are cost-prohibitive or preclude the vindication of statutory rights in an arbitral forum. *Faber*, 367 F.3d at 1053. While only the employee or applicant is required to arbitrate claims, only Brand bears any significant financial burden of the arbitration, so there is ultimately no substantive unfairness.

Therefore, I reject De Dios's contention that the Agreement to Arbitrate is unconscionable.

### b.  *Lack of consideration*

As his final challenge to the validity of the Agreement to Arbitrate, De Dios contends that, because it was in an employment application, it is not supported by consideration. He argues that an employer's promise to hire and continue at-will employment is not consideration for an employee to waive his right to a jury trial, citing *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 591-94 (D. Maryland 2013). He contends that, here, because the Agreement to Arbitrate binds only him to mandatory arbitration, but not Brand, there are no mutual promises between the parties to serve as consideration. While it is certainly true that Iowa law requires consideration for a valid contract, *see, e.g., Rick v. Sprague*, 706 N.W.2d 717, 724 (Iowa 2005);

*Taggart v. Drake University*, 549 N.W.2d 796, 800 (Iowa 1996), my colleague in the Southern District of Iowa, Ronald E. Longstaff, then-Senior District Court Judge, concluded that an arbitration clause in an employment application was supported by consideration, under Iowa law, because the employer agreed to consider the prospective employee's application in exchange for her agreement to arbitrate. *Fuller v. A.G. Edwards & Sons, Inc.*, No. 3:06-CV-072, 2006 WL 8436694, at *2 (S.D. Iowa Nov. 22, 2006). I reach the same conclusion, here. The Agreement to Arbitrate was supported by adequate consideration, because Brand agreed to consider De Dios's application in exchange for his agreement to arbitrate. Thus, this challenge to the validity of the Agreement to Arbitrate also fails.

### 4. Summary

De Dios does not dispute that his claim of wrongful termination for asserting rights under the Iowa Workers' Compensation Act "falls within the terms of that agreement," and I conclude that, notwithstanding De Dios's objections, the Agreement to Arbitrate is valid. *Robinson*, 841 F.3d at 783-84; *Torres*, 781 F.3d at 968. Once the court determines that an arbitration agreement is valid and that the dispute in question falls within the scope of that arbitration agreement, § 4 of the FAA "[b]y its terms . . . 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985), with emphasis in the original).

### C. Dismiss Or Stay?

Brand requests that I grant its motion to dismiss Brand's claim and compel arbitration. Alternatively, Brand requests that I stay the action pending outcome of the arbitration. "Where arbitration is required by § 4 of the FAA, § 3 requires that the court

stay the court proceedings upon application of one of the parties." *Madol v. Dan Nelson Automotive Group*, 372 F.3d 997, 998 (8th Cir. 2004). I do not think that Brand's *alternative* request for a stay requires such a stay, and De Dios has not requested a stay. Thus, I believe that, in the circumstance presented, here, whether to stay or dismiss lies in my discretion. *See, e.g., McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1168 (8th Cir. 2017); *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 821 (8th Cir. 2015). A district court may abuse its discretion by dismissing an action after compelling arbitration, if it is not clear that the arbitration will resolve the entire controversy between the parties. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 770 (8th Cir. 2011). Here, it appears likely that the arbitration *will* resolve the entire controversy between the parties. Nevertheless, I conclude that the likelihood that one or the other of the parties may seek enforcement or review of any arbitration award warrants a stay rather than dismissal of the case pending arbitration.

## III.    CONCLUSION

Upon the foregoing,

1.    Plaintiff De Dios's April 11, 2018, Motion To Conduct Discovery (docket no. 15) is **denied**. Nevertheless, **not later than June 27, 2018,** Brand shall produce amendments, if any, to the Brand Dispute Resolution Program that occurred during the period of De Dios's employment.

2.    Defendant Brand's February 20, 2018, Motion To Dismiss And/Or Stay And Compel Arbitration (docket no. 8) is **granted**, as follows:

a.    The parties **are compelled to arbitration** of De Dios's claim that Brand wrongfully terminated him for asserting rights under the Iowa Workers' Compensation Act, but

b.    The order compelling arbitration is **stayed to and including July 27, 2018,** to afford Brand the opportunity to produce amendments, if any, to the

Brand Dispute Resolution Program, as ordered in paragraph 1, above, and for De Dios to move to reconsider the order compelling arbitration on the basis of such amendments.

**IT IS SO ORDERED**.

**DATED** this 13th day of June, 2018.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA